UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DANIEL VAN ALLEN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) )    Case No. 4:20-CV-01262-SEP |
| TAMI LAWSON, et al., | ) ) ) |
| Defendants. | ) |

### MEMORANDUM AND ORDER

Self-represented prisoner Plaintiff Daniel Van Allen brings this 42 U.S.C. § 1983 civil rights action against four Missouri Department of Corrections employees. The matter is before the Court upon Plaintiff's motion for leave to commence this action without prepayment of the required filing fee. Doc. [2]. Having reviewed the motion and the financial information submitted in support, the Court will grant the motion and assess an initial partial filing fee of $14.25. *See* 28 U.S.C. § 1915(b)(1). In addition, after reviewing the complaint under 28 U.S.C. § 1915(e)(2), the Court will partially dismiss the complaint and will order the Clerk to issue process or cause process to issue as to the non-frivolous portions of the complaint.

### Initial Partial Filing Fee

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

In his signed and sworn motion, Plaintiff states that he is not employed but that his mother sends him money every month. Doc. [2]. Plaintiff submitted an inmate account statement showing average monthly deposits of $71.25. The Court finds that Plaintiff has

insufficient funds in his prison account to pay the entire fee and will therefore assess an initial partial filing fee of $14.25, which is 20 percent of Plaintiff's average monthly deposit.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  To state a claim for relief, a complaint must plead more than "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972).  A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015).  However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

## The Complaint

Plaintiff, an inmate at Farmington Correctional Center ("FCC"), brings this action under 42 U.S.C. § 1983, alleging violations of his civil rights against four defendants: (1) Tami Lawson (FCC Warden); (2) John Hagerty (Functional Unit Manager); (3) David Vandergriff (FCC Deputy Warden); and (4) Anne Precythe (Director of the Missouri Department of Corrections

("MDOC")).  Doc. [1] at 1, 3.  Plaintiff sues all four Defendants in both their individual and official capacities.  *Id.* at 1.

Plaintiff alleges that there is an "ongoing and dangerous issue" at FCC of threats and extortion by gang members, who "intend to target gays, transgenders, and sex-offenders." *Id.* at 5, 9.  Plaintiff alleges that the gang members target him because he is gay and a sex offender.  *Id.* at 6, 10.  He claims that 90% of the population at FCC fits into one of these three categories, and Plaintiff therefore asserts that this targeted extortion is a civil rights issue.  *Id.* at 10.  Plaintiff fears it "could eventually turn violent and put [his] life in danger." *Id.* at 5.

According to Plaintiff, on December 7, 2019, a member of the prison gang "Family Values" approached him and told him that he would have to pay the gang "to stay on the yard." *Id.* at 6.  Plaintiff alleges that the gang member told Plaintiff that all gay prisoners had to pay the gang "sooner or later." *Id.*  The next day, the gang member "tried to have one of his fellow gang members hit" Plaintiff, but the person refused.  *Id.*  Over the next few months, the same gang member threatened Plaintiff with a "missile"—"a person not associated with the gang who is paid to attack a person." *Id.*  The gang member eventually gave Plaintiff a canteen list of items he wanted Plaintiff to buy for him.  Plaintiff did not purchase the items, and he received further threats from the gang member.  *Id.*  On February 25, 2020, Plaintiff was placed in administrative segregation and protective custody.  Although Plaintiff does not specifically state as much, the complaint intimates that Plaintiff's placement was due to his complaints about threats from the gang member, who did not receive a reprimand or conduct violation.  *Id.* at 7.

On March 12, 2020, Plaintiff had a detention hearing with Defendant John Hagerty, a Functional Unit Manager at FCC.  *Id.*  Plaintiff asserts that when he complained to Hagerty about the gang extortion, he was "threatened" and told it was his own fault.  *Id.* at 5, 7.  Hagerty stated that if Plaintiff went "to the hole" again for complaints concerning gang extortion, Hagerty would "make sure" Plaintiff loses his college classes and is transferred to a different facility.  *Id.* at 7.  If transferred, Plaintiff would not be able to take the Missouri sex offender treatment program (MOSOP), which would cause him to lose his parole date.  *Id.* at 5-6.

On March 31, Plaintiff was confronted by two gang members from the "Mexican gang," who wanted to collect the debt that the Family Values gang member claimed Plaintiff owed him.  *Id.* at 7.  Six days later, one of the Mexican gang members gave Plaintiff a "twenty dollar canteen list" of items, which he demanded Plaintiff purchase.  *Id.*  Plaintiff did so eight days later and put them in a bucket in the laundry room as directed by the gang member.  *Id.* at 7-8.

However, two months later, in late June, Plaintiff was told that he still owed the Family Values gang because the Mexican gang had no right to collect on their behalf. *Id.* at 8.

On July 13, Plaintiff paid the Family Values gang member fifteen dollars' worth of canteen. On the same date, a different inmate complained about extortion by this gang member, and the gang member's cell was "searched for canteen he did not purchase." *Id.* at 8. Plaintiff alleges that nothing was found because the gang member was storing the extorted goods in another inmates' cell. The next day, Plaintiff was told that he would have to continue to pay the Family Values gang on a monthly basis. *Id.*

On August 11, Plaintiff made his monthly extortion payment in the form of canteen items. However, Plaintiff's cellmate complained to staff and the gang members' cell was searched. When Plaintiff's canteen items were found, Plaintiff felt forced to go along with the gang member's lie to staff that they were cooking together, to explain why Plaintiff's items were in the gang member's cell. *Id.* at 8-9.

Plaintiff claims he has reported these gang threats to FCC staff, but he has been ignored. *Id.* at 6. Plaintiff was warned that if he continues to report the issue, he will be transferred to a different facility. Because the gang members communicate between facilities with coded messages in inmate-to-inmate mail, Plaintiff was told that he would be targeted "again only worse" at a different facility. *Id.* at 6-7. Plaintiff alleges that most inmates who go into protective custody because of this issue suffer double the extortion when they get out, or the gang sends a "missile" to attack them. One staff member told Plaintiff that "DOC has no control over Family Values and the gang dominates every yard in DOC." *Id.* at 6. Plaintiff claims the FCC staff "willingly chose to take no action to stop this problem before it became so big" and that "Family Values has more control at FCC than any correctional officer does." *Id.* at 9. According to Plaintiff, MDOC "is doing nothing to stop gangs from threatening and extorting other inmates, and it has become an epidemic." *Id.*

Plaintiff believes that Defendants Lawson and Vandergriff "know[] the problems that are occurring" at FCC, and as "higher ranking staff," they "have the most power to put a stop to it." *Id.* at 10. As to Defendant Precythe, Plaintiff "feel[s] that she should already know of the culture of extortion that is occurring throughout DOC and [that she] has the authority to step in." *Id.* All Defendants have "the power and authority and opportunity to take action to stop these crimes from occurring." *Id.*

Finally, Plaintiff alleges that he mailed his complaint in this matter from FCC on August 31. *Id.* at 11. Two days later, after Lawson received a copy of Plaintiff's claims, she put him in administrative segregation. Plaintiff claims that, as a result of his 30-day segregation for filing this lawsuit, he "will be kicked out" of his college classes, as threatened. *Id.*

For relief, Plaintiff asks that Defendants and the MDOC make prison changes, including: pursuing criminal charges for gang extortion in the prisons; removing all Family Values gang members from FCC; creating an "avenue" for gang members to safely drop out of prison gangs; creating a twelve-month gang intervention program; moving Defendant Hagerty to a position having "no contact with or decision making about any inmate"; stopping inmate-to-inmate mail; and requiring prisoners to register phone numbers that they call. *Id.* at 12-13. Plaintiff also seeks $100,000 in money damages. *Id.* at 14.

## Discussion

Prison gangs are nothing new to the Missouri Department of Corrections. Over thirty years ago, in 1987, the United States Supreme Court decided a case that involved the constitutionality of a MDOC regulation on prisoner correspondence that was partially put in place as a means of restricting communications among gang members. *See Turner v. Safley*, 482 U.S. 78, 91-92 (1987). The Court upheld the MDOC regulation, which prohibited correspondence between certain prisoners, as reasonably related to valid security goals of the correctional system. *Id.* at 93. The Court discussed how MDOC used certain strategies to try to limit prison gang activity, such as restricting mail between gang members at different prison institutions, transferring gang members to different institutions, and providing protective custody for certain inmates. *Id.* at 91.

In this case, Plaintiff states that MDOC is not doing enough to control prison gangs. Plaintiff's allegations appear to consist of three different claims: (1) that his right to equal protection has been violated because he is being targeted by a gang due to being gay and a sex-offender; (2) that Defendants have failed to protect him from threats and extortion by prison gang members; and (3) that Defendants have retaliated against him for complaints about prison gang activity. For the reasons discussed below, the Court finds that Plaintiff fails to state an equal protection or failure-to-protect claim against Defendants, and therefore those claims will be dismissed. Further, Defendants David Vandergriff and Anne Precythe will be dismissed from this matter. The Court will issue process against Defendants Tami Lawson and John Hagerty in their individual capacities, however, as to Plaintiff's First Amendment retaliation claim.

## I. Equal Protection

Plaintiff asserts that targeted extortion of gay, transgender, and sex-offender inmates by the Family Values gang "is a civil rights issue." Doc. [1] at 10. Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 685 (1978). The essential elements of a constitutional claim under § 1983 are that the defendant acted under color of state law and that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right. *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009). To that end, "the party charged with a deprivation must be one 'appropriately characterized as [a] state actor[].'" *Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008) (quoting *Wichersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007)).

When a private party acts under color of state law, it can be held liable under § 1983. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). However, "[a] private party may be held liable under § 1983 only if it is a 'willful participant in joint activity with the State or its agents.'" *Gibson v. Regions Fin. Corp.*, 557 F.3d 842, 846 (8th Cir. 2009) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982)). In order to state a claim against a private party under § 1983, the plaintiff "must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993).

To the extent that Plaintiff attempts to assert an equal protection[1] claim here, he fails. The gang members who discriminatorily target inmates based on their sexual preference or criminal charges are not acting under state law and are not state actors. They are private parties. There are no facts alleged suggesting joint activity between Defendants and the gang members. Plaintiff does not allege any mutual understanding or conspiracy. As such, Plaintiff fails to state an equal protection claim against Defendants.

## II. Failure to Protect

The Supreme Court has made it clear that the Eighth Amendment encompasses an inmate's right to be protected from harm by fellow inmates. *Farmer v. Brennan*, 511 U.S. 825,

---

[1] The Equal Protection Clause provides, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The purpose of the equal protection clause . . . is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sunday Lake Iron Co. v. Wakefield Tp.*, 247 U.S. 350, 352 (1918).

833 (1994). As such, prison officials must take reasonable measures to guarantee inmate safety and protect prisoners from violence by other inmates. *Berry v. Sherman*, 365 F.3d 631, 633-34 (8th Cir. 2004) (citing *Farmer*, 511 U.S. at 832-33). There are limitations to this guarantee, however, as "prison officials violate the Eighth Amendment only when they exhibit a deliberate or callous indifference to an inmate's safety." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018) (internal quotation marks and citation omitted).

This claim "has an objective component, whether there was a substantial risk of harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk." *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007) (quoting *Farmer*, 511 U.S. at 837).

In this case, Plaintiff alleges that gang members are threatening him with violence and extorting him for canteen items. He asserts that the situation "could eventually turn violent and put [his] life in danger," however, he does not allege that he has suffered from any violent acts. Doc. [1] at 5. In fact, the one violent act that he mentions was a failed attempt. Plaintiff claims that in December 2019, a gang member tried to get a fellow gang member to hit Plaintiff, but that the "person did not listen." *Id.* at 6.

Instead of physical violence, Plaintiff claims that he has been extorted out of personal property in the form of canteen items. Plaintiff alleges that a member of the Family Values gang began threatening him in December 2019. Doc. [1] at 6. In April 2020, he made his first gang-extortion payment in the form of canteen items valued at approximately twenty (20) dollars. *Id.* at 7. He subsequently made payments in July and August 2020, and he was told that he would be expected to pay on a monthly basis going forward. His July payment was valued at approximately fifteen (15) dollars. *Id.* at 8.

"As prisons are inherently dangerous environments," not every injury suffered by a prisoner at the hands of another inmate, is grounds for constitutional liability. *Vandevender v. Sass*, 970 F.3d 972, 976 (8th Cir. 2020) (citing *Farmer*, 511 U.S. at 834). Plaintiff's allegations here are not "sufficiently serious," nor do they result in a "denial of 'the minimal civilized measure of life's necessities,'" as required to state an Eighth Amendment failure-to-protect claim against Defendants. *See Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

Although inmate threats should not be tolerated, the Court does not find that Plaintiff's allegations of twenty-dollars-a-month extortion rise to "a substantial risk of serious harm" to Plaintiff that would constitute cruel and unusual punishment. *Lenz*, 490 F.3d at 995. Moreover, even if Plaintiff's assertions did establish that prison gangs at FCC created "a pervasive risk of harm in the form of violence or threatened violence," the complaint still provides insufficient information to find that Defendants have been deliberately indifferent to those risks. *See Jensen v. Clarke*, 94 F.3d 1191, 1195 (8th Cir. 1996).

The facts alleged do not establish that Defendants have shown "deliberate or callous indifference" to the risk of gang violence. *See Patterson*, 902 F.3d at 851. Plaintiff reports that he was placed in administrative custody after reporting threats and extortion by a fellow inmate, a gang member. Doc. [1] at 7. Plaintiff describes two separate occasions where FCC officials searched the cells of inmates accused of extorting canteen items out of other inmates. *Id.* at 8. On one of these occasions, canteen items purchased by Plaintiff were found in another inmates' cell, but Plaintiff admits to lying to the correctional officers when questioned about it. *Id.* at 8-9. Such allegations suggest that Defendants have responded reasonably to the threats of prison gang violence and extortion.

Plaintiff's factual assertions do not establish an excessive risk to Plaintiff's safety that has been deliberately disregarded by Defendants. Therefore, Plaintiff fails to state an Eighth Amendment claim of cruel and unusual punishment for Defendants' failure to protect him.

### III. Retaliation

The right to be free from retaliation for availing oneself of the prison grievance process is clearly established in the Eighth Circuit. *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (citing *Nelson v. Shuffman*, 603 F.3d 439, 449-50 (8th Cir. 2010)). "To succeed on [a] § 1983 retaliation claim, [Plaintiff] must prove that he engaged in protected activity and that [D]efendants, to retaliate for the protected activity, took adverse action against [him] that would chill a person of ordinary firmness from engaging in that activity." *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007). Both filing a prison grievance and filing an inmate lawsuit are protected First Amendment activities. *Id.* at 1029. In addition, the threat of retaliation is sufficient injury to support a First Amendment claim if the threat was made in retaliation for an inmate's use of grievance procedures. *Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994).

Plaintiff alleges that, in March 2020, Functional Unit Manager John Hagerty "threatened" him at a detention hearing. Doc. [1] at 5, 7. According to Plaintiff, Hagerty told him that if he

was put in administrative segregation again as a result of a complaint about a gang member at FCC, Hagerty would "make sure" that Plaintiff loses his college credits and gets transferred to a different Missouri prison. *Id.* at 7. Because FCC has the Missouri sex offender treatment program that Plaintiff needs to complete for parole, a transfer would result in the loss of his parole date. *Id.* at 5. Plaintiff claims to have made his first extortion payment to a gang member in the month following Hagerty's threat, because he knew that he could not "seek help from the institutional staff," having "already been threatened with repercussions." *Id.* at 9.

Plaintiff has adequately alleged a claim of First Amendment retaliation against John Hagerty. At Plaintiff's detention hearing after his time in protective custody due to a gang complaint, Plaintiff orally complained to Hagerty about gang extortion at FCC and the threat of gang violence. *See Endicott v. Hurley*, No. 2:14 CV 107 DDN, 2017 WL 76899, at *10 (E.D. Mo. Jan. 9, 2017) (finding prisoner's informal oral complaints to be protected First Amendment activity for a retaliation claim). Hagerty's threats in response of lost college credit and a lost parole date would chill a person of ordinary firmness from continuing to engage in the protected activity of complaining. *See Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994) (finding threat of retaliation sufficient injury if made in retaliation). Therefore, the Court finds that Plaintiff has sufficiently pleaded a protected activity and resulting threats of retaliation.

Plaintiff likewise states a claim for retaliation against Tami Lawson. According to Plaintiff, he was placed in administrative segregation by Lawson after she received a copy of his complaint in this matter. Doc. [1] at 11. As a result of this segregation placement, Plaintiff will lose his college credits. *Id.* Filing a lawsuit is a protected First Amendment activity, for which Plaintiff alleges to have suffered the adverse action of administrative segregation and lost credits.

As for Defendants David Vandergriff and Anne Precythe, Plaintiff alleges no facts indicating that they were personally involved in any retaliation against Plaintiff based on gang complaints. "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the Plaintiff of his constitutional rights). Plaintiff's allegations that Vandergriff and Precythe "know[] the problems" at FCC and "have the most power to stop it," are not enough to constitute personal involvement or direct responsibility. Doc. [1] at 10. Thus, Plaintiff fails to state a claim for retaliation against Vandergriff and Precythe.

## IV.     Official Capacity Claims

Plaintiff brings his claims against Defendants in both their individual and their official capacities.  In an official capacity claim against an individual, the claim is "against the governmental entity itself."  *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017) (quoting *Brockinton v. City of Sherwood*, 503 F.3d 667, 674 (8th Cir. 2007)).  Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer."  *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999).  In order to prevail on an official capacity claim, the Plaintiff must establish the governmental entity's liability for the alleged conduct.  *Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016).

"Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights."  *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008).  However, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "suit for damages against a state official in his official capacity is a suit against the State, and the State is not a person under § 1983").  Moreover, in the absence of a waiver, the Eleventh Amendment bars suit against a state official acting in his or her official capacity.  *Morstad v. Dep't of Corrs. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998).

Here, Defendants are employees of the state of Missouri.  Plaintiff does not allege any governmental liability on the part of the State, nor does Plaintiff allege any Eleventh Amendment waiver.  Plaintiff's official capacity claims against all Defendants will therefore be dismissed.

## V.     Conclusion

Plaintiff fails to state any claim upon which relief may be granted against Defendants David Vandergriff and Anne Precythe.  Plaintiff's claims against those two Defendants will be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).  However, Plaintiff does state a claim for First Amendment retaliation against Defendants John Hagerty and Tami Lawson in their individual capacities.  As such, the Court will direct the Clerk of Court to issue process on these claims.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Doc. [2]) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff shall pay an initial filing fee of $14.25 within **twenty-one (21) days** of the date of this Order.  Plaintiff is instructed to make his

remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the complaint as to Defendants John Hagerty and Tami Lawson, regarding Plaintiff's claim of First Amendment retaliation, brought against these Defendants in their individual capacities.  Defendants shall be served with process in accordance with the waiver agreement the Court maintains with the Missouri Attorney General's Office for service on Missouri Department of Corrections Employees.

**IT IS FURTHER ORDERED** that Plaintiff's claims brought against Defendants John Hagerty and Tami Lawson in their official capacities are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall **not** issue process or cause process to issue upon the complaint as to Defendants David Vandergriff and Anne Precythe because, as to these Defendants, the complaint fails to state a claim upon which relief can be granted.  Plaintiff's claims against Defendants David Vandergriff and Anne Precythe are **DISMISSED without prejudice**.

An Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 15th day of December, 2020.

*Sarah E. Pitlyk*
_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE